Jeannette C. Thomas
vs. } W. C. A. No. 927.
Clarence M. Munroe

June 13, 1929.

WALSH, J. This is an appeal from the findings and a decree by the Commissioner of Labor under the powers given to him in Chapter 1207 of the Public Laws of 1928, relative to petitions under the Workmen's Compensation Act, so-called.

Chapter 1207 of the Public Laws of 1928, Section 2, reads as follows:

"Sec. 2. * * * when death has resulted from the injury and the dependents of the deceased employee entitled to compensation are, or the apportionment thereof among them is, in dispute, any person in interest may file in the office of the commissioner of labor a petition setting forth the names and residences of the parties, the facts relating to employment at the time of the injury, the cause, extent and character of the injury, the amount of wages, earnings, or salary, received at the time of the injury * * * and such other facts as may be necessary and

proper for the information of the commissioner, and shall state the matter in dispute and the claims of the petitioner with reference thereto."

Section 4 of Chapter 1207 of the Public Laws of 1928 reads:

"* * * and the commissioner of labor shall hear such witnesses as may be presented by each party and in a summary manner shall decide the merits of the controversy and file his decision thereof in writing together with his order upon the parties in accordance therewith."

On September 7th, 1928, Jeannette C. Thomas filed a petition with the Commissioner of Labor, setting forth in substance that she was the widow of Harold L. Thomas; that Harold L. Thomas on the 6th day of March, 1928, was regularly employed by one Clarence M. Munroe as a truck driver at a salary of twenty dollars a week; that Thomas and Munroe were acting under and subject to the provisions of the Workmen's Compensation Act at that time; that on said 6th day of March, 1928, the deceased, Harold L. Thomas, sustained personal injuries arising out of and in the course of his employment, which resulted in his death on March 8th, 1928; that the employer had notice and so forth of the injuries and death; that the injuries were not occasioned by the wilful intention of Thomas to bring about injuries to himself, and did not result from intoxication while on duty. On all of these points the parties in the present case are agreed, but there are two points of dispute raised before us by Munroe, the employer.

The first one is the jurisdiction of this Court to hear the matter. The respondent contends that in view of the fact that Chapter 1207 of the Public Laws of 1928 was not passed until April 1928, and that this death on which the action of the petitioner is based took place in March 1928, the old law should govern and that the petition should have been filed in the Superior Court direct instead of with the Commissioner of Labor, hence the Commissioner of Labor had no right to pass upon it and that consequently, we, as the Superior Court, have no right to pass upon this appeal from the decision of the Commissioner of Labor. On that point, to save the rights of the respondent, we deem it wise to incorporate in this decision the fact that we ruled that the petition having been filed in September 1928, the Commissioner of Labor had jurisdiction to hear this particular petition, had jurisdiction to make findings upon the same and to cause a decree incorporating his findings to be filed in that case, and that this Court has full jurisdiction to hear this matter on appeal from that decree on the findings of the Commissioner of Labor. Hence the matter is properly before us and the petitioner has her proper standing. The respondent's exception to this ruling has heretofore been noted.

We will pass now to the second point of dispute, to wit: the right of Jeannette C. Thomas to recover under the provisions of the Workmen's Compensation Act, as the widow of the deceased. A great deal has been said in argument in this case in regard to the interpretation to be given by this Court to certain provisions of the Workmen's Compensation Act. The two main provisions to be construed, about which there is a dispute, are section 7 and section 8 of Chapter 92 of the General Laws of 1923. In that connection there seems to be ample authority in our own Rhode Island cases as to what the intent of the Legislature was. In the case of *Corria* vs. *Fink Brothers*, 45 R. I. at page 81, Chief Justice Sweetland of the Supreme Court said: "It appeared at the hearing before the Superior Court that said widow had received damages from a third person, a corporation, which caused the death of said workman." And on that account the widow's peti-

tion for compensation was denied as against the employer, she having received compensation in an action against the person directly responsible for the injury. The Court there said: "The petition was heard before a justice of the Superior Court who decided that the petitioner Adelina Corria, the mother of the deceased, was not at all dependent upon the deceased at his death, and that the minor brother and sister of the deceased, petitioners, 'could be only partly dependent although there is much doubt as to whether they were at all dependent.' Said justice further found that the deceased left a widow, him surviving, who was living with the deceased at the time of his death and who under the statute is conclusively presumed to have been wholly dependent upon him and entitled to all compensation due from the respondent under the Workmen's Compensation Act." With that decision before us one element, and one element alone, is in this case. Was this widow, surviving the deceased, living with him at the time of his death?

The evidence in this case falls into two general classes: the blood relatives of the husband, with the undertaker, on the one side, and on the other the widow and her family, together with some apparently disinterested witnesses.

The Court can easily see the picture in that undertaking room when the arrangements for the funeral were being made; we can easily see the interest that a sister-in-law who didn't like her brother's wife might well have. Giving due credit to all human emotions that might be present, including love for the deceased brother's wife, or the reverse, we shall not hold the widow, under the distressing circumstances that appeared in this undertaker's room, to exact responsibility for each individual word that she uttered or may have uttered under the circumstances but will look beyond that and find, if we can, what the truth was, irrespective of what she might have said in an unguarded moment.

There is no question but what this husband and wife were on good terms up to the latter part of May 1927. There is no question but what he couldn't find a job in New Bedford, particularly during the winter season, that would compensate him sufficiently to support his wife. There is no question but what they lived separate and apart by mutual agreement during the week, at any rate, and had a sort of tacit arrangement to meet each other at the week-ends. We think the great preponderance of the evidence shows that they did meet each other week-ends either in Providence or New Bedford.

There has been an attempt in this case to create a suspicion as to a reason for their living separate and apart and we have carefully watched for any concrete evidence of any improper conduct on the part of the wife or any possible circumstances from which such improper conduct might be inferred. We have not been able to find any. The wife has shown that she received support up to the first of February, 1928, from her husband, and that during the month of February she did not receive any support. She has testified that he was going away and she was going to await communication from him as to his whereabouts. Whether or not the husband was engaged in a little love affair of his own during the month of February or March does not appear. There is no evidence of it and the decision must be based on the evidence. It does appear that when death came the widow was there, that she showed extreme grief (the witnesses agree on that), that she honestly told her financial situation to the undertaker, that she was present at the funeral, that she took home an article of clothing belonging to her husband which she prized. It appears, at least inferentially, that the widow loved her husband even in

death. We believe that while the burden is, as the respondent says, upon the petitioner to satisfy the Court by the preponderance of the evidence that she was living with her husband and that she was dependent upon him, that she has sustained the burden in this case by the more dependable evidence. All the facts and circumstances seem to show that.

We find as a fact that this petitioner was living with her husband at the time of his decease and we purposely leave out of this decision any reference to living apart from a justifiable cause because we do not think there is any element of that sort here. We find that she was wholly dependent upon her husband for her support at the time of his death and that she is entitled to the relief that the Act provides in such cases.

A decree may be drawn in accordance with the above findings.

For petitioner: Ralph M. Greenlaw.

For respondent: Henshaw, Lindemuth & Baker.